UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § | Crim. No. SA-06-CR-106 |
| | § § | |
| WILLIE JAMES CLEVELAND | § | |

ORDER

On this day came on to be considered Defendant's motion to Suppress (docket no. 19).

1. On July 6, 2005, San Antonio Police Department officers were on patrol when Officer Garza noticed a vehicle with a temporary dealer's plate displayed in the back window rather than in the license plate area. In addition, Officer Garza saw the vehicle make a turn at a stop light without signaling for 100 feet prior to making a turn. A traffic stop was initiated and the vehicle pulled over.

2. Officer Garza proceeded to speak with the driver (Defendant Cleveland). Garza's partner (Officer Fuller) provided cover.

3. Officer Garza obtained identification from the Defendant and ran his ID in the patrol car's computer. Officer Garza was then apprised that the Defendant was a convicted felon on probation or parole. When Officer Garza was returning to the Defendant's vehicle, Officer Fuller informed him that it appeared that the driver was hiding something behind his back.

4. When Officer Garza returned to the driver of the vehicle, he asked the driver (Defendant) whether anything illegal was in the car and for permission to search the vehicle. The Defendant consented and he was patted down and escorted to the patrol car while the vehicle was checked.

5. After about fifteen minutes and repeated searches of the vehicle, Officer Fuller located a .45 caliber handgun stuffed into the foam of the driver seat. Thereafter, the Defendant was placed under arrest, handcuffed and read his Miranda warnings.

6. After the *Miranda* warnings were read, the Defendant admitted to owning the

weapon stuffed in the driver seat, that he was having problems with his sister's boyfriend, and that the passenger had nothing to do with the weapon.

7. Sometime later a Special Agent from the Bureau of Alcohol, Tobacco and Firearms arrived at the scene. Special Agent Benavides again read *Miranda* warnings to the Defendant and assured the Defendant that he had no interest in pursuing a federal case against him and that ATF just wanted to make sure "he wasn't out here doing any gang banging or anything so we wanted to speak to him about that and he did openly with me."

8. Later that day Officer Garza prepared/typed an incident report at his office. In the original version of the report Officer Garza did not include any reference to the Defendant having failed to signal within 100 feet of the stop light. However, when he took the report to the magistrate's office, but prior to speaking with someone from the District Attorney's office, Officer Garza proofread his report and noticed that he omitted any reference to the failure to timely signal violation. He thereafter handwrote the following: "The (AP1) had also failed to signal for 100 ft prior to making a left turn."

9. On May 30, 2006, a parole revocation hearing was held before a Parole Board Hearing Officer. Officers Garza and Fuller testified in that hearing. Neither one of them was specifically asked for all the reasons that caused them to pull over the Defendant's vehicle on July 6, 2005. Neither one of them testified at the hearing that failing to signal for 100 feet was one of the reasons they stopped the vehicle.

10. Defendant argues that there was no probable cause to stop the vehicle because the Defendant did not violate any traffic laws, and accordingly any handgun or verbal statements must be suppressed. In the alternative, the Defendant argues that the failing to signal statute is overly broad. In the alternative, Defendant argues that he did not consent to any search of the vehicle.

11. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const., Amend. IV. "There is no question but that the stopping of a vehicle and the detention of its occupants is a 'seizure' within the meaning of the Fourth Amendment." *U.S. v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993).

12. A traffic stop may be pretextual, but under *Whren v. United States*, 517 U.S. 806 (1996), a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has "probable cause to believe that a traffic violation has occurred. This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop." *U.S. v. Escalante*, 239 F.3d 678, 680-81 (5th Cir. 2001).

13. Texas Transp. Code section 503.063 and 503.069 and 43 Tex. Admin. Code 8.139 allow temporary cardboard tags to be displayed in a rear window or on the rear license plate holder. If the temporary cardboard tags are displayed in the rear window the tag must be attached in such a manner that it is clearly visible when viewed at 15 feet from the rear of the vehicle. Accordingly, there was no probable cause to stop the vehicle based on this alleged traffic violation.

14. Texas Transp. Code section 545.104(b) states: "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." Although the constitutionality of section 545.104(b) has not been specifically affirmed by a court, Texas courts have denied vagueness challenges to section 545.104(a). *See Hargrove v. State*, 40 S.W.3d 556 (Tex. App.–Hou. [14th Dist.] 2001, pet. denied). Defendant's challenge to the statute based on vagueness or it being overly broad is denied.

15. Alternatively, Defendant submits that there is no evidence that the officer observed his failure to signal for the one hundred feet before the turn. This challenge is similar to one made in *Tucker v. State*, 183 S.W.3d 501 (Tex. App.- Ft. Worth 2005, no pet.). In *Tucker*, the appellant challenged the officer's ability to observe the driver's failure to signal for the one hundred feet before the turn. He argued that because the officers did not have a clear view of the car for the entire one hundred feet before the stop, there was no evidence to support the stop. The *Tucker* court stated: "However, the officer's testimony was clear that at least at the time the car reached the stop sign the driver had not signaled to turn. Only after the driver saw the officer, did he signal to turn, according to the officer. While Ivory's testimony conflicts with the officer's because Ivory states that he always signaled before he made a turn at an intersection, this is a fact determination made by the trial court to which we give great deference." *Id.* at 507.

16. In this case, like *Tucker*, the officer observed the vehicle for at least five seconds before it entered the intersection. The vehicle approached the intersection and its turn signal was not activated. The officer only saw the turn signal activated when the vehicle was ready to make its turn. There was probable cause to stop the vehicle due to a traffic violation (Texas Transp. Code section 545.104(b)).

17. The Defendant asserts that Officer Garza's testimony is not credible inasmuch as his initial report failed to contain a reference to any failure to properly signal and no mention of that violation was made at the revocation hearing. The Court finds that Officers Garza and Fuller explained themselves at the suppression hearing. In addition, the Court notes that the handwritten change to the report was made the same day as the traffic stop, and that fact supports Officer Garza's testimony.

18. Finally, Defendant asserts that he did not consent to a search of the vehicle. To determine whether consent was voluntary, the court considers the following factors: (1) the voluntariness of the custodial status; (2) the presence of coercive police procedures; (3) the extent and level of cooperation with the police; (4) the awareness of the right to refuse consent; (5) the education and intelligence of the defendant; and (6) the belief that no incriminating evidence will be found. *U.S. v. Solis*, 299 F.3d 420, 435-36 (5th Cir.2002).

19. The Defendant did not testify at the suppression hearing. The Defendant did not call the passenger of the vehicle to provide any testimony regarding the consent issue. Officer Garza testified that he asked the Defendant whether anything illegal was in the car to which the Defendant responded "hell no." Officer Garza also testified that he asked the Defendant "if it was okay if I checked him and his vehicle and he said to go ahead." The testimony was not controverted in any fashion. The testimony throughout the suppression hearing was that the Defendant was cooperative and the setting was calm. There was no testimony that any coercive or abusive tactics were used by the officers. At the time consent was given the Defendant was not detained or under arrest. The weapon was well hidden and eluded the officers for some time. The Court finds that the Defendant consented to the search of his vehicle.

For the reasons stated above, Defendant's motion to suppress (docket no. 19) is DENIED.

It is so ORDERED.

SIGNED this 8th day of January, 2007.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE